# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| EDWARD SMITH, derivatively on behalf of BATH & BODY WORKS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> DANIEL HEAF, ALESSANDRO BOGLIOLO, LUCY BRADY, FRANCIS HONDAL, DANIELLE LEE, SARAH NASH, JUAN RAJLIN, STEPHEN STEINOUR, J.K. SYMANCYK, STEVEN VOSKUIL, PATRICIA BELLINGER, MICHAEL MORRIS, EVA BORATTO, and GINA BOSWELL, <br><br> Defendants, <br><br> -and- <br><br> BATH & BODY WORKS, INC., <br><br> Nominal Defendant. | Case No. 2:26-cv-00112 <br><br> VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT <br><br> JURY TRIAL DEMANDED |

Plaintiff Edward Smith ("Plaintiff"), derivatively on behalf of Bath & Body Works, Inc. ("Bath & Body Works" or the "Company"), brings the following complaint against the Company's board of directors (the "Board") and executive officers for breaches of fiduciary duties, gross mismanagement, waste of corporate assets, unjust enrichment, and violation of Section 14(a) of the Securities Exchange Act of 1934. Except for allegations specifically pertaining to Plaintiff and Plaintiff's own acts, the allegations in the Complaint are based upon information and belief, which include but are not limited to: (i) the Company's public filings with the United States Securities and Exchange Commission (the "SEC"); (ii) pleadings filed in *Muralidhar Reddy Lingam v. Bath & Body Works* (S.D. Ohio 2:26-cv-00039-MHW-EPD) (the "Securities Class Action"); (iii) corporate governance documents available on the Company's website; (iv) media reports; and (v) other publicly available information.

1

## **NATURE OF THE ACTION**

1.      This is a stockholder derivative action brought by Plaintiff, a stockholder of Bath & Body Works, on behalf of the Company against the Defendants (as defined herein).  This action alleges breaches of fiduciary duty by the Board and senior executive officers occurring from at least January 1, 2024, to November 19, 2025 (the "Relevant Time Period"). During that time the Defendants caused or allowed Bath & Body Works to issue or make materially false and misleading statements concerning the Company's financial condition and business operations.

2.      Bath & Body Works is a global retailer focused on scented personal care and home fragrance products. Beginning in 2024, Bath & Body Works scouted product categories beyond its four core categories - men's products, lips, hair, and laundry, which the Company praised.

3.      On August 28, 2025, before the market opened, Bath & Body Works released its second quarter 2025 financial results, reporting earnings per diluted share of $0.30, a decline of 55.8% year over year, missing the Company's prior guidance on the low end by $0.03. The Company further reported net income of $64 million, which is a decline of 57.9% year over year. The Company also announced it was cutting its full year guidance for earnings per diluted share by $0.03 at the midpoint, to $3.28 to $3.53.

4.      On this news, Bath & Body Works' stock price fell $2.18, or 6.9%, to close at $29.36 per share on August 28, 2025, on especially heavy trading volume.

5.      On November 20, 2025, before the market opened, Bath & Body Works released third quarter 2025 financial results. The Company reported revenue declined 1% year over year, missing Company's guidance of 1-3% growth for the quarter. Net income also declined, falling 26% to $77 million. Finally, the Company announced it was cutting full year guidance for net sales

from a previously positive 1. 5%-2. 7% to a negative "high single digits." The Company also cut expected earnings per diluted share from $3.28 to $3.53 to "at least $2.83."

6.     That same day, in an investor presentation, the Company admitted its strategy of "adjacencies, collaborations and promotions" had "not grown our total customer base." The Company also offered a "diagnosis" of its underperformance, including that the focus on adjacencies had "reduced focus on investing in our core categories;" that collaborations "have been used to carry quarters;" and that the Company had become "overly reliant on deeper and more frequent promotions to drive growth." The Company announced it would focus on core categories while exiting certain adjacencies.

7.     On this news, Bath & Body Works' stock price fell $5.22, or 24.8%, to close at $15. 82 per share on November 20, 2025, on unusually heavy trading volume.

8.     Throughout the Relevant Time Period, Defendants made materially false and misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) the Company's strategy of pursuing "adjacencies, collaborations and promotions" was not growing the customer base nor delivering the level of growth in net sales which the Company praised; (2) as the Company's strategy of "adjacencies, collaborations and promotions" waned, the Company turned to brand collaborations "to carry quarters" and obscure weak underlying financial results; (3) as a result, the Company was unlikely to meet its own previously issued financial guidance; (4) that, as a result of the foregoing, Defendants' commendatory statements about the Company's business, operations, and prospects were materially misleading.

9.     Through this action, Plaintiff seeks to hold the Board and executive officers accountable for making or causing the Company to make false and misleading statements, as well

as the inadequate internal controls that allowed the misconduct to occur, in breach of their fiduciary duties to the Company.

**PARTIES**

A. **Plaintiff**

10.     Plaintiff is a current shareholder of Bath & Body Works and has continuously held Bath & Body Works stock during all times relevant hereto, and is committed to retaining Bath & Body Works shares through the pendency of this action to preserve his standing.  Plaintiff will adequately and fairly represent the interests of Bath & Body Works and its shareholders in enforcing its rights.

B. **Nominal Defendant**

11.     Nominal Defendant Bath & Body Works is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at Three Limited Parkway. Columbus, OH 43230. Bath & Body Works common stock trades on the NYSE under the ticker symbol "BBWI."

C. **Individual Defendants**

12.     Defendant Daniel Heaf has served as CEO of the Company since May 2025 and has been a director of the Company since June 2025.

13.     Defendant Alessandro Bogliolo has been a director of the Company since 2022.

14.     Defendant Lucy Brady has been a director of the Company since 2023.

15.     Defendant Francis Hondal has been a director of the Company since 2021.

16.     Defendant Danielle Lee has been a director of the Company since 2021.

17.     Defendant Sarah Nash serves as Chair of the Board and has been a director of the Company since 2019.

18.     Defendant Juan Rajlin has been a director of the Company since 2022.

19.     Defendant Stephen Steinour has been a director of the Company since 2014.

20.     Defendant J.K. Symancyk has been a director of the Company since 2021.

21.     Defendant Steven Voskuil has been a director of the Company since 2023.

22.     Defendant Patricia Bellinger served as a director of the Company from 2017 until June 27, 2024.

23.     Defendant Michael Morris served as a director of the Company from 2012 until June 27, 2024.

24.     Defendants Bogliolo, Brady, Hondal, Lee, Nash, Rajlin, Steinour, Symancyk, Voskuil, Bellinger and Morris are herein referred to as "Director Defendants."

25.     Defendant Gina Boswell served as CEO of the Company from December 1, 2022, until May 16, 2025.

26.     Defendant Eva Boratto has served as CFO of the Company since 2023.

27.     Defendants Nash, Boswell, and Boratto are herein referred to as "Officer Defendants."

## JURISDICTION AND VENUE

28.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a)(1), and Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9.

29.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

30.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either

present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

31.     Venue is proper in this court under 28 U.S.C. § 1391, because Bath & Body Works is headquartered in this District, and a significant amount of the conduct at issue took place and had an effect in this District.

### FURTHER SUBSTANTIVE ALLEGATIONS

**A.      Company Background**

32.     Bath & Body Works Inc ((Bath & Body), formerly L Brands Inc, is a specialty retailer that operates both physical and online stores. The company's product portfolio includes body care products, home fragrance products, soaps and sanitizers, personal and beauty care products, accessories, bath products and fragrances. Its four key product categories or "adjacencies" are men's products, lips, hair, and laundry.

**B.      Bath & Body Works's False and Misleading Statements**

33.     On June 4, 2024, the Company issued a press release stating its first quarter 2024 financial results, which praised the Company's the results, and also praised that Bath & Body Works' financial results were led by a "shifted fiscal calendar" and negatively affected only by "weaker than expected results from certain international markets."  Specifically, the press release stated:

**Bath & Body Works Reports First Quarter 2024 Results**

*Net Sales of $1. 4 Billion Exceeded Guidance*
*Diluted Earnings Per Share of $0.38 Exceeded Guidance,*
*up 9% on a GAAP Basis and 15% on an Adjusted Basis Compared to Prior Year*

\*      \*      \*

**First Quarter 2024 Results**

The company reported net sales of $1,384 million for the quarter ended May 4, 2024, a decrease of 0.9% compared to net sales of $1,396 million for the quarter ended April 29, 2023. The change in year-over-year net sales benefited by approximately 200 basis points from the shifted fiscal calendar as expected, offset by an impact of approximately 170 basis points resulting from weaker than expected results from certain international markets.

The company reported earnings per diluted share of $0. 38 for the first quarter 2024, compared to $0. 35 for the same period of the prior year. First quarter operating income was $187 million compared to $181 million last year, and net income was $87 million compared to $81 million last year.

34.     On June 4, 2024, Bath & Body Works published an investor presentation containing the financial results for the first quarter 2024, assured its purported financial results, and further praised  that the results were shepherded by "strong floorsets" and "strong execution within our fulfilment operations," and that they were negatively impacted only by "weaker-than-expected wholesale revenue." The investor presentation further announced that the "year-over-year growth drivers included: Lip, Hair, Men's and Fine Fragrance Mist" and insisted that "Men's continued to be one of our fastest growing categories in Body Care":



35.    On June 4, 2024, the Company filed its quarterly report for the period ended May 4, 2024, on a Form 10-Q with the SEC, reaffirming the previously reported financial results and reporting its net sales in separated form. The quarterly report praised that the Company's outlook for growth was supported by the Company's strategy, including a "continued focus on our new category adjacencies":

**Outlook**

We anticipate continuing macroeconomic pressures as well as continuing postpandemic normalization of candles and sanitizers in fiscal 2024. We expect the normalization to moderate as we move through the year. We plan to deliver growth from our core categories, supported by newness and seasonal storytelling and continued focus on our new category adjacencies, including men's, hair, lip, and laundry, to reach new customers.

*    *    *

The following table provides a disaggregation of Net Sales for the first quarters of 2024 and 2023:

| | First Quarter | |
| --- | --- | --- |
| | 2024 | 2023 |
| | (in millions) | |
| Stores - U.S. and Canada (a) | $    1,065 | $    1,034 |
| Direct - U.S. and Canada | 261 | 280 |
| International (b) | 58 | 82 |
| **Total Net Sales** | $    1,384 | $    1,396 |

_____
(a)Results include fulfilled buy online-pick up in store orders.
(b)Results include royalties associated with franchised stores and wholesale sales.

The Company's net sales outside of the U.S. include sales from Company-operated stores and its e-commerce site in Canada, royalties associated with franchised stores and wholesale sales. Certain of these sales are subject to the impact of fluctuations in foreign currency. The Company's net sales outside of the U.S. totaled $126 million and $145 million for the first quarters of 2024 and 2023, respectively.

36.     On August 28, 2024, Bath & Body Works issued a press release announcing second quarter 2024 financial results, which commended its financial results:

**Bath & Body Works Reports Second Quarter 2024 Results**

*Net Sales of $1. 5 Billion, In Line -with Guidance Earnings Per Diluted Share of $0.68; Adjusted Earnings Per Diluted Share of $0.37, Exceeded Guidance Updates Fiscal Year 2024 Guidance Increases Full-Year Expected Share Repurchases to $400 million from $300 million*

\*       \*       \*

**Second Quarter 2024 Results**

The company reported net sales of $1, 526 million for the quarter ended August 3, 2024, a decrease of 2. 1% compared to net sales of $1, 559 million for the quarter ended July 29, 2023.

The company reported earnings per diluted share of $0.68 for the second quarter 2024, compared to $0.43 for the same period of the prior year. Second quarter operating income was $183 million compared to $188 million last year, and net income was $152 million compared to $99 million last year.

37.     On August 28, 2024, Bath & Body Works issued an investor presentation of financial results for the second quarter 2024, which reaffirmed its alleged financial results, and further praised that the Company's financial results were partially driven by its "semi-annual sale (SAS) performance" and "solid execution on our Fuel for Growth initiatives," while, at the same time negatively affected by "more value-conscious consumer due to choppier macroeconomic environment. "The presentation also commended Bath & Body Works' approach of driving growth through adjacencies.  The Company stated: "Men's, Hair, Lip and Laundry performing well." Specifically, the investor presentation stated



38.     On August 28, 2024, Bath & Body Works issued its quarterly report for the period ended August 3, 2024, on a Form 10-Q filed with the SEC, reaffirming the previously reported financial results and the additional net sales by disaggregation. The quarterly report stated that its decline in net sales value was primarily due to customers selecting "buy online pick up in store" delivery options and "customers [who had] become increasingly cautious in their spending. "

39. The report however still contended that the Company's outlook for growth was supported by the Company's strategy – "extending our reach through new category adjacencies":

**Outlook**

As we look ahead to the remainder of the year, we anticipate continuing pressures given the first-half sales trends and the choppier macroeconomic environment. We are focused on executing with precision, continuing to bring newness to customers and demonstrating our strong value proposition across our product assortment. Our strategic priorities remain our core categories, supported by newness and innovation, and extending our reach through new category adjacencies, including men's, hair, lip, and laundry, and expansion of off-mall and international locations.

\* \* \*

The following table provides Net Sales for the second quarter of 2024 in comparison to the second quarter of 2023:

| | **2024** | **2023** | **% Change** |
|---|---|---|---|
| | **(in millions)** | | |
| Stores - U.S. and Canada (a) | $ 1,140 | $ 1,144 | (0.3 %) |
| Direct - U.S. and Canada | 297 | 329 | (9.7 %) |
| International (b) | 89 | 86 | 2.2 % |
| **Total Net Sales** | $ 1,526 | $ 1,559 | (2.1 %) |

_____
(a)Results include fulfilled buy online-pick up in store ("BOPIS") orders.
(b)Results include royalties associated with franchised stores and wholesale sales.

For the second quarter of 2024, Net Sales decreased $33 million, or 2.1%, to $1.526 billion, compared to the second quarter of 2023. Direct Net Sales decreased $32 million, or 9.7%, driven by a decline in fulfilled orders, which was primarily due to our customers continuing to select our BOPIS option (which is recognized as store Net Sales) and a decline in website traffic. Stores Net Sales decreased $4 million, or 0.3%, due to a decline in total transactions as we have seen our customers become increasingly cautious in their spending. International Net Sales increased $3 million, or 2.2%, driven by increased product shipments.

40. On November 25, 2024, Bath & Body Works released its third quarter 2024 financial results, which praised the Company's financial results:

**Bath & Body Works Reports Third Quarter 2024 Results**

*Net Sales of $1.6 Billion, Increased 3%; Earnings Per Diluted Share of $0. 49,*
*Both Exceeding Guidance*
*Updates Fiscal Year 2024 Guidance*

\*　　　\*　　　\*

**Third Quarter 2024 Results**

The company reported net sales of $1,610 million for the quarter ended November 2, 2024, an increase of 3. 0% compared to net sales of $1, 562 million for the quarter ended October 28, 2023.

The company reported earnings per diluted share of $0. 49 for the third quarter 2024, compared to $0.52 last year. Third quarter operating income was $218 million compared to $221 million last year, and net income was $106 million compared to $119 million last year.

41.　　On November 25, 2024, the Company issued an investor presentation of its financial results for the third quarter 2024, which, once again, upheld its  financial results, and further announced that its financial results were caused by, "customers responding favorable to innovation" including "adjacencies of men's, lip, and laundry. The investor presentation trumpeted Bath & Body Works' leading of business growth through adjacencies:





*             *             *



42.     On November 26, 2024, Bath & Body Works issued its quarterly report for the period ended November 2, 2024 on a Form 10-Q filed with the SEC, reaffirming the their prior financial results, and further reporting net sales by disaggregation, that showed a decline in net sales to "customers continuing to select our BOPIS option" and a "franchise partners affected by the war in the Middle East." The report continued to trumpet that the Company's growth

perspective was supported by its "extending our reach by expanding and diversifying our product portfolio through category adjacencies":

**Outlook**

As we look ahead to the fourth quarter, the market remains competitive with a value conscious consumer. Our strategic priorities are focused on driving revenue growth through our core categories, supported by newness and innovation to create customer demand and convey the quality and value of our products. We are also focused on extending our reach by expanding and diversifying our product portfolio through category adjacencies, including men's, hair, lip, and laundry, and expansion of off-mail stores and international geographies.

\* \* \*

The following table provides Net Sales for the third quarter of 2024 in comparison to the third quarter of 2023:

| | 2024 | 2023 | % Change |
|---|---|---|---|
| | (in millions) | | |
| Stores - U.S. and Canada (a) | $    1,220 | $    1,168 | 4.4 % |
| Direct - U.S. and Canada | 321 | 317 | 1.5 % |
| International (b) | 69 | 77 | (11.1 %) |
| **Total Net Sales** | $    1,610 | $    1,562 | 3.0 % |

_____
(a)Results include fulfilled buy online-pick up in store ("BOPIS") orders.
(b)Results include royalties associated with franchised stores and wholesale sales.

For the third quarter of 2024, Net Sales increased $48 million, or 3.0%, to $1.610 billion, compared to the third quarter of 2023. Stores Net Sales increased $52 million, or 4.4%, due to new store growth, an increase in BOPIS fulfilled orders and the benefit of the shifted fiscal calendar, partially offset by the decline in average dollar sale. Direct Net Sales increased $4 million, or 1.5%, primarily driven by an increased average order size, partially offset by a decline in fulfilled orders, which was primarily due to our customers continuing to select our BOPIS option (which is recognized as store Net Sales). International Net Sales decreased $8 million, or 11.1%, driven by a decline in wholesale shipments to our franchise partners affected by the war in the Middle East.

43.    On February 27, 2025, Bath & Body Works issued a press release disclosing its financial results for the fourth quarter and full-year 2024, which commended its financial results,

and further trumpeted that the Company's "strategy is working, and we are driving topline growth through" among other things "category adjacencies." The release assured investors that its negative financial results were only as a result of a change to a "52-week fiscal year." The Company also set forth guidance for the full fiscal year 2025:

### Bath & Body Works Reports 2024 Fourth Quarter and Full-Year Results and Provides 2025 Guidance

- Fourth quarter 2024 net sales of *$2. 8 billion and earnings per diluted share of $2. 09, both exceeding guidance*

- *Fourth quarter net sales performance driven by strong traffic and conversion, building on Q3 momentum*

\* \* \*

Gina Boswell, CEO of Bath & Body Works, commented, "Our team delivered strong performance that exceeded expectations on both the top and bottom line in the critical fourth quarter. This success was driven by our product innovation, strong execution and the outstanding customer experience provided by our associates." Boswell added, "Our strategy is working, and we are driving topline growth through product innovation, enhanced marketing and technology, and by extending our reach through category adjacencies and international expansion. Despite complex challenges facing the broader retail sector, we ended the second half of the year strong. As we enter 2025, we have a lot to be excited about, and we are eager to build on our momentum."

\* \* \*

Full-Year 2024 Results Net sales decreased 1.6% to $7,307 million for the 52-week fiscal year ended February 1, 2025, compared to $7,429 million for the 53-week fiscal year ended February 3, 2024. The 53rd week in fiscal 2023 represents a headwind of approximately 100 basis points to the net sales change in fiscal 2024. The company reported earnings per diluted share of $3. 61 for the year, compared to $3. 84 in 2023. Full-year operating income was $1, 266 million compared to $1, 285 million last year, and net income was $798 million compared to $878 million last year.

### 2025 Guidance

For fiscal 2025, the company is forecasting net sales to grow between 1% to 3% compared to $7,307 million in fiscal 2024. Full-year 2025 earnings per diluted share is expected to be between $3. 25 and $3. 60, compared to $3. 61 and adjusted

earnings per diluted share of $3.29 in fiscal 2024. The company's full-year outlook includes the anticipated impact of approximately $300 million of cash deployed towards share repurchases. In Fiscal 2025, we expect to generate free cash flow of $750 to $850 million.

44.     On February 27, 2025, Bath & Body Works issued an investor presentation detailing its financial results for the fourth quarter and full-year 2024, which reaffirmed its financial results, and further represented that its financial results were driven by "growing adjacencies" including "expanded customer reach by growing adjacencies such as Men's, Hair, Lips and Laundry." The presentation further reaffirmed the Company's full fiscal year 2025 guidance:



*          *          *



45.     On March 14, 2025, Bath & Body Works filed with the SEC its annual report for the fiscal year ended February 1, 2025, on Form 10-K, reaffirming its previously reported financial results and reporting disaggregated net sales.  The Company stated that the decline in net sales resulted from "customers continuing to select our BOPIS option" and "a decline in wholesale shipments to our franchise partners affected by the war in the Middle East." The annual report also praised the Company's "competitive strengths" – its "adjacencies" and "collaborations" and further trumpeted the Company belief that "extending our reach through adjacencies" "will accelerate Net Sales growth":

**Our Competitive Strengths**

We believe the following competitive strengths contribute to our leading market position, differentiate us from our competitors and will drive future long-term sustainable growth:

\*        \*        \*

We are continuously offering innovation and newness to customers through compelling product introductions paired with exciting marketing activities. During 2024, we rolled out Everyday Luxuries, our prestige-inspired line of fine fragrance mists, and we view it as a platform to drive long-term growth and expect to expand the collection in 2025. We also believe that adjacencies are an opportunity to expand our product portfolio, applying our fragrance expertise and leadership to large addressable markets. Another key element across our core business is collaborations, which allow us to deliver highly differentiated storytelling that generates top-of-mind brand awareness with existing and new customers, drive traffic and enhance our cultural relevancy. In 2024, we launched collaborations with leading brands in pop culture through partnerships and plan to continue to build upon this strategy in 2025.

\*        \*        \*

The following table provides Net Sales for 2024 in comparison to 2023:

|  | 2024 | 2023 | % Change |
|---|---|---|---|
|  | **(in millions)** | | |
| Stores - U.S. and Canada (a) | $    5,534 | $    5,507 | 0.5 % |

| Direct - U.S. and Canada | | 1,474 | | 1,582 | (6.8 %) |
|---|---|---|---|---|---|
| International (b) | | 299 | | 340 | (11.8 %) |
| **Total Net Sales** | $ | 7,307 | $ | 7,429 | (1.6 %) |

_____

(a) Results include fulfilled BOPIS orders.
(b) Results include royalties associated with franchised stores and wholesale sales.

For 2024, total Net Sales decreased $122 million to $7. 307 billion, and was negatively impacted by approximately 100 basis points due to the 53rd week in fiscal 2023.

Direct Net Sales decreased $ 108 million, or 6.8%, due to a decline in orders, which was primarily due to our customers continuing to select our BOPIS option (which is recognized as store Net Sales) and the 53rd week in 2023, partially offset by an increased average order size. International Net Sales decreased $41 million, or 11. 8%, primarily driven by a decline in wholesale shipments to our franchise partners affected by the war in the Middle East Stores Net Sales increased $27 million, which was effectively flat, primarily due to new store growth and the increase in BOPIS fulfilled orders offset by a decline in average dollar sales and the 53rd week in 2023.

*     *     *

**Fiscal 2025 Outlook**

We believe our strategy and actions position the Company to achieve sustainable, profitable growth and to drive long-term shareholder value. We believe our continued innovation across our core categories supported by compelling marketing and enhanced technology, building on innovation platforms we launched in 2024 and extending our reach through adjacencies and international expansion, will accelerate Net Sales growth. We anticipate continuing macroeconomic pressures and do not anticipate improvement in consumer sentiment with the continued challenging backdrop of economic uncertainty in 2025.

46.     On May 19, 2025, the Company issued a press release announcing financial results for the first quarter of 2025, and reaffirming the Company's full year guidance:

In connection with today's announcement, the Company is pre-announcing its preliminary first quarter net sales and earnings per diluted share results. For the first quarter ended May 3, 2025, net sales were $1, 424 million, an increase of 3% compared to the prior year period. Earnings per diluted share were $0.49 for the first quarter of 2025, compared to $0.38 last year. First quarter 2025 sales were at

the high end of the guidance range, and earnings per share exceeded the high end of the guidance range. The Company maintains its initial full-year 2025 net sales guidance of 1% to 3% growth and $3. 25 to $3. 60 earnings per diluted share.

47.     On May 29, 2025, the Company issued another press release containing and praising its financial results for the first quarter 2025 and stating that the financial results were driven by "compelling innovation." The press release reaffirmed guidance for the fall fiscal year 2025, and issued guidance for the second quarter 2025:

### Bath & Body Works Reports 2025 First Quarter Results and Maintains Fiscal Year 2025 Guidance

- *First quarter net sales up 3% to $1. 4 billion, at the high end of the guidance range, and earnings per diluted share up 29% to $0.49, exceeding the high end of the guidance range*

- *Net sales performance driven by compelling innovation*

- *Company maintains 2025 net sales guidance of 1% to 3% growth and earnings per diluted share guidance of $3.25 to $3.60, inclusive of current tariff rates*

*     *     *

### First Quarter 2025 Results

The company reported net sales of $1,424 million for the quarter ended May 3, 2025, an increase of 2. 9% compared to net sales of $1,384 million for the quarter ended May 4, 2024.

The company reported earnings per diluted share of $0.49 for the first quarter of 2025, compared to $0.38 last year.

First quarter operating income was $209 million compared to $187 million last year, and net income was $105 million compared to $87 million last year.

*     *     *

### 2025 Guidance

The company is maintaining its full-year 2025 net sales guidance of 1% to 3% growth, compared to $7,307 million in fiscal 2024, and 2025 full-year earnings per diluted share guidance of $3. 25 to $3.60, compared to earnings per diluted share of $3.61 and adjusted earnings per diluted share of $3. 29 in fiscal 2024. The company's full-year outlook includes the anticipated impact of all tariff rates

currently in effect and levied by the U. S. government and other countries. Our outlook also includes the anticipated impact of approximately $300 million of cash deployed towards share repurchases. In Fiscal 2025, we continue to expect to generate free cash flow of $750 million to $850 million. The company expects second quarter 2025 net sales to be flat to up 2% compared to $1,526 million in the second quarter of 2024. Second quarter 2025 earnings per diluted share is expected to be between $0.33 and $0.38, compared to earnings per diluted share of $9.68 and adjusted earnings per diluted share of $0.37 in the second quarter of 2024. Our second quarter 2025 outlook also includes the anticipated impact of all tariff rates as referenced above.

48.    On May 29, 2025, Bath & Body Works issued an investor presentation concerning its financial results for the first quarter 2025, which reaffirmed its financial results, and stated that the financial results were a result of "our adjacent categories of Men's, Lips, Hair and Laundry." The investor presentation further trumpeted that the "Men's category remains a compelling avenue." It also reaffirmed the Company's full year 2025 and second quarter 2025 guidance:



\*                    \*                    \*

## FY 2025 GUIDANCE

$ in millions, except earnings per share

| METRIC | GUIDANCE (May 29, 2025†) | GUIDANCE (February 27, 2025†) |
|---|---|---|
| Net Sales | up 1% – up 3% | up 1% – up 3% |
| Gross Profit Rate | ~44% | ~44% |
| SG&A Expense Rate | ~27.5% | ~27% |
| Net Non-Operating Expense | ~$255 | ~$255 |
| Tax Rate | ~26% | ~26% |
| Weighted Average Diluted Shares Outstanding | ~212 million | ~213 million |
| Earnings Per Diluted Share | $3.25 - $3.60 | $3.25 - $3.60 |
| Capital Expenditures | $250 - $270 | $250 - $270 |
| Free Cash Flow | $750 - $850 | $750 - $850 |

＊ ＊ ＊

## Q2 2025 GUIDANCE

$ in millions, except earnings per share

| METRIC | GUIDANCE (May 29, 2025†) |
|---|---|
| Net Sales | Flat to up 2% |
| Gross Profit Rate | ~41% |
| SG&A Expense Rate | ~30% |
| Net Non-Operating Expense | ~$65 |
| Tax Rate | ~29% |
| Weighted Average Diluted Shares Outstanding | ~212 million |
| Earnings Per Diluted Share | $0.33 - $0.38 |

49.     On May 29, 2024, the Company issued its quarterly report for the period ended May 3, 2025 on a Form 10-Q reaffirming the previously reported financial results and further reporting disaggregated net sales.  The report attributed a decline in some net sales to "customers

continuing to select our BOPIS option" and an increase in other net sales due to "timing of product shipments to our partners." The Company touted that its outlook for growth was supported by the Company's strategy in "extending our reach through adjacencies" and represented that it "will continue to accelerate Net Sales growth over the long term":

**Outlook**

We believe our strategy and actions position the Company to achieve sustainable, profitable growth and to drive long-term shareholder value. We believe our continued innovation across our core categories supported by compelling marketing and enhanced technology, building on innovation platforms we launched in 2024 and extending our reach through adjacencies and international expansion, will continue to accelerate Net Sales growth over the long term. Amid a challenging macroeconomic backdrop, we have remained disciplined and decisive in our actions which is evidenced in our current performance.

\* \* \*

The following table provides Net Sales for the first quarter of 2025 in comparison to the first quarter of 2024:

|  | 2025 | | 2024 | | % Change |
|---|---|---|---|---|---|
| | **(in millions)** | | | | |
| Stores - U.S. and Canada (a) | $ | 1,110 | $ | 1,065 | 4.3 % |
| Direct - U.S. and Canada | | 250 | | 261 | (4.3 %) |
| International (b) | | 64 | | 58 | 10.1 % |
| **Total Net Sales** | $ | 1,424 | $ | 1,384 | 2.9 % |

(a)Results include fulfilled buy online pick up in store ("BOPIS") orders.
(b)Results include royalties associated with franchised stores and wholesale sales.

For the first quarter of 2025, total Net Sales were $1,424 million and increased $40 million, or 2.9%, compared to the first quarter of 2024. Stores Net Sales increased $45 million, or 4.3%, primarily driven by an increase in transactions due to an increase in BOPIS fulfilled orders (which are recognized as store Net Sales) and new store growth, and an increase in average dollar sales. Direct Net Sales decreased $11 million, or 4.3%, driven by a decline in fulfilled orders, which was primarily due to our customers continuing to select our BOPIS option, partially offset by an increase in average order size. International Net Sales increased $6 million, or 10.1%, driven by timing of product shipments to our partners.

50.     The above statements were materially false and misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Defendants failed to disclose: (1) that the Company's strategy of pursuing "adjacencies, collaborations and promotions" was not growing the customer base nor delivering the level of growth in net sales as trumpeted; (2) that as the Company's strategy of "adjacencies, collaborations and promotions" wavered, it relied on brand collaborations "to carry quarters" and obscure otherwise weak underlying financial results; (3) that as a result, the Company was unlikely to meet its financial guidance; (4) that, as a result of the foregoing, Defendants' optimistic statements about the Company's business, operations, and prospects were materially misleading and lacked a reasonable basis.

### C.     The Truth is Revealed

51.     On August 28, 2025, before the market opened, Bath & Body Works released its second quarter 2025 financial results, reporting earnings per diluted share of $0.30, a decline of 55.8% year over year, missing the Company's prior guidance on the low end by $0.03. The Company also reported net income of $64 million, a decline of 57.9% year over year, and announced that it was cutting its fall year guidance for earnings per diluted share by $0.03 at the midpoint, to $3.28 to $3.53:

**Bath & Body Works Reports 2025 Second Quarter Results and Updates
Fiscal Year 2025 Guidance**

- *Second quarter net sales up 1. 5% to $1. 5 billion, at the high end of the guidance range*

- *Earnings per diluted share of $0. 30; adjusted earnings per diluted share of $0. 37, at the high end of the guidance range*

- *Full-year 2025 earnings per diluted share guidance of $3. 28 to $3. 53*

*     *     *

**Second Quarter 2025 Results**

The company reported net sales of $1,549 million for the quarter ended August 2, 2025, an increase of 1. 5% compared to net sales of $1, 526 million for the quarter ended August 3, 2024. The company reported earnings per diluted share of $0.30 for the second quarter of 2025, compared to $0.68 last year. Second quarter operating income was $157 million compared to $183 million last year, and net income was $64 million compared to $152 million last year.

*     *     *

**2025 Guidance**

The company is narrowing its full-year 2025 net sales guidance from 1% to 3% growth to 1. 5% to 2.7% growth, compared to $7,307 million in fiscal 2024. Full year 2025 earnings per diluted share is now expected to be between $3. 28 to $3. 53, compared to earnings per diluted share of $3. 61 in fiscal 2024.

*     *     *

The company expects third quarter 2025 net sales to be up 1% to 3%, compared to $1,610 million in the third quarter of 2024. Third quarter 2025 earnings per diluted share is expected to be between $0. 37 and $0. 45, compared to $0.49 in the third quarter of 2024. Our third quarter 2025 outlook also includes the anticipated impact of all tariff rates as referenced above.

52.     On this news, the Company's stock price fell $2.18, or 6.9%, to close at $29.36 per share on August 28, 2025, on heavy trading volume.

53.     On November 20, 2025, before the market opened, the Company released its third quarter 2025 financial results, reporting a revenue decline of 1% year over year, missing Company's guidance of 1-3% growth for the quarter. The results also showed that net income also declined, falling 26% to $77 million. The Company also announced it was further cutting full year guidance for net sales from a previously positive 1.5%-2.7% to a negative "high single digits." It also cut expected earnings per diluted share from $3.28 to $3.53 to "at least $2.83":

**Bath & Body Works Outlines Strategic Transformation for Sustainable
Growth and Reports 2025 Third Quarter Results**

- Launches the Consumer First Formula with four strategic priorities to drive sustainable long-term growth

- Third-quarter net sales of $1. 6 billion, down 1%. Earnings per diluted share of $0. 3 7; Adjusted earnings per diluted share of $0. 35

- Q4 and full-year 2025 guidance lowered reflecting current business trends and continuation of recent macro consumer pressures

\* \* \*

**Third Quarter 2025 Results**

The company reported net sales of $1,594 million for the quarter ended November 1, 2025, a decrease of 1% compared to net sales of $1,610 million for the quarter ended November 2, 2024.

Earnings per diluted share were $0.37 for the third quarter of 2025, compared to $0.49 last year. Third quarter operating income was $161 million compared to $218 million last year, and net income was $77 million compared to $106 million last year

\* \* \*

**2025 Guidance**

The company is revising its full-year 2025 net sales guidance from 1.5% to 2.7% growth to a decline of low single digits, compared to $7,307 million in fiscal 2024. Full-year 2025 earnings per diluted share is now expected to be at least $2.83, compared to earnings per diluted share of $3.61 in fiscal 2024. Full-year 2025 adjusted earnings per diluted share is now expected to be at least $2.87, compared to adjusted earnings per diluted share of $3.29 in fiscal 2024.

54. At an investor presentation that same day, Bath & Body Works admitted its strategy of "adjacencies, collaborations and promotions" had "not grown our total customer base." The Company also offered a "diagnosis" of its underperformance – that the focus on adjacencies had "reduced focus on investing in our core categories;" that collaborations "have been used to cany quarters;" and that the Company had become "overly reliant on deeper and more frequent

promotions to drive growth." The Company announced that it would exit certain adjacencies and instead focus on core categories:



\*　　　　\*　　　　\*



55.　　At the Company's earnings call hosted the same day, the Company's CEO, Defendant Heaf, announced that "starting in the first half of next year" the Company would make

26

"selective category exits such as hair and men 's grooming as we refocus on the core." Heaf further explained, "[t]he problem is those adjacencies haven't grown in the way that we had expected, and they are not significant the ones that we are starting to take out." Later in the call, Heaf stated "when it comes to adjacencies, I want to just clarify what I've said. We are no longer going to invest in adjacencies." Defendant Heaf stated:

> Let me first give you the diagnosis in 4 clear points. Firstly, we pursued adjacencies to attract new consumers, but that strategy has not delivered the growth we expected and it reduced focus in investing in our core categories. Secondly, collaborations that should have been used to drive excitement, energy and equity into our brand have been used to carry quarters.

> Thirdly, as these strategies and other tactics have not delivered growth, we have relied on deeper and more frequent promotions. Great value and exciting deals have been part of our brand, and that will not change. However, over reliance on promotion delivers diminishing returns and erodes brand equity, and that is what has happened here. While all these efforts appeal to our existing consumers, they did not grow our customer base, and we have not attracted a younger consumer.

> *     *     *

> Starting in the first half of next year, you will see thoughtful edits to our assortment and selective category exits such as hair and men 's grooming as we refocus on the core.

> *     *     *

> The problem is those adjacencies haven 't grown in the way that we had expected, and they are not significant the ones that we are starting to take out. So we're looking at every merchant does SKUs that are not contributing that much and SKUs that are not productive, and that's where we're starting in that long tail.

> *     *     *

> And then when it comes to adjacencies, I want to just clarify what I've said. We are no longer going to invest in adjacencies. We are going to invest in our core. We have told you of 2 categories that we plan to exit in hair and men's grooming.

56.     On this news, Bath & Body Works' stock price fell $5.22, or 24.8%, to close at $15. 82 per share on November 20, 2025, on heavy trading volume.

**D.      Defendants' Misconduct Has and Continues to Harm the Company**

57.      As a direct and proximate result of the Defendants' conduct, the Company has been harmed and will continue to be. The harm includes, but is not limited to, the costs already incurred and to be incurred defending the Company in the Securities Class Action, as well as costs to be incurred in remediating deficiencies in the Company's internal controls.

58.      Bath & Body Works's reputation and goodwill have also been damaged by the Defendants' misconduct.

**E.      Bath & Body Works Issues False and Misleading Proxy Statements**

59.      In addition to the false and misleading statements discussed above, the Director Defendants also caused the Company to issue false and misleading proxy statements during the Relevant Period, including the Schedule 14A Proxy Statements issued on May 15, 2024 (the "2024 Proxy") and April 25, 2025 (the "2025 Proxy"), that sought stockholder votes to, among other things, re-elect the Director Defendants to serve on the Board.

60.      The Director Defendants drafted, approved, reviewed, and/or signed the 2024 Proxy and the 2025 Proxy before they were filed with the SEC and disseminated to Bath & Body Works's stockholders. The Director Defendants negligently issued materially misleading statements in the 2024 Proxy and the 2025 Proxy. These allegations are based solely on negligence, they are not based on any allegations of recklessness or knowing conduct by or on behalf of the Director Defendants and they do not allege or do not sound in fraud. Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference or any allegation of fraud, scienter, or recklessness with regard to the 2024 Proxy and 2025 Proxy allegations and related claims.

61.      In support of re-electing themselves, the Director Defendants highlighted their supposed oversight of the Company in the 2024 Proxy. The 2024 Proxy stated:

The Board as a whole has responsibility for risk oversight, with a focus on the most significant risks facing the Company, including strategic, competitive, economic, operational, legal, regulatory, ESG and compliance risks. In addition, certain committees of the Board have been assigned oversight of risk areas that are particularly relevant to their respective areas of responsibility and oversight. For example, the Audit Committee oversees our enterprise risk management program and reviews policies and practices with respect to risk assessment and risk management, including discussing with management the Company's major financial risk exposures and the steps that have been taken to monitor and control such exposures. The Audit Committee also reviews policies and practices with respect to cybersecurity risk and the Company's data security policies. The HCC Committee considers the risks to our business associated with our compensation policies and practices from the perspective of enterprise risk. The HCC Committee is also responsible for overseeing any allegation of any claim of discrimination, harassment or retaliation that presents a material risk to the Company. The Nominating & Governance Committee reviews the Company's corporate governance structure, director succession matters and ESG matters. All committees report to the full Board on risk matters as appropriate. The nature and effect of the risks faced by our Company vary in many ways. The potential impact of some risks may be minor, and accordingly, as a matter of business judgment, allocating significant resources to avoid or mitigate a minor potential adverse impact may not be prudent. In some cases, a higher degree of risk may be acceptable. As such, the amount of oversight of the Board for different types of risk depends on the nature of the risk.

The risk oversight responsibility of the Board and its committees is supported by our management reporting processes, which are designed to provide visibility to the Board to those Company personnel responsible for risk assessment, including our Chief Legal Officer, who also serves as our Chief Compliance Officer and reports to the Chief Executive Officer, and to provide information about management's identification, assessment and mitigation strategies for critical risks. Our management team is responsible for day-to-day risk management. This includes identifying, evaluating and addressing potential risks that may exist at the enterprise, strategic, reputational, financial, operational, legal, compliance and reporting levels. The Board maintains an open dialogue with, has regular access to, and receives ongoing updates from, management and, when appropriate, outside advisors and experts, with respect to any potential risks identified by management. The Board believes that this division of labor among the Board, its committees and management allows us to appropriately monitor risks over the short, intermediate and long-term.

62.     In support of re-electing themselves, the Director Defendants highlighted their supposed oversight of the Company in the 2025 Proxy. The 2025 Proxy stated:

The Board as a whole has responsibility for risk oversight, with a focus on the most significant risks facing the Company, including strategic, competitive, economic, operational, legal, regulatory, sustainability and compliance risks. In addition, certain committees of the Board have been assigned oversight of risk areas that are particularly relevant to their respective areas of responsibility and oversight. For example, the Audit Committee oversees our enterprise risk management program and reviews policies and practices with respect to risk assessment and risk management, including discussing with management the Company's major financial risk exposures and the steps that have been taken to monitor and control such exposures. The Audit Committee also reviews policies and practices with respect to cybersecurity risk and the Company's data security policies. The HCC Committee considers the risks to our business associated with our compensation policies and practices from the perspective of enterprise risk. The HCC Committee is also responsible for overseeing any allegation of any claim of discrimination, harassment or retaliation that presents a material risk to the Company. The Nominating & Governance Committee reviews the Company's corporate governance structure, director succession matters and sustainability matters. All committees report to the full Board on risk matters as appropriate. The nature and effect of the risks faced by our Company vary in many ways. The potential impact of some risks may be minor, and accordingly, as a matter of business judgment, allocating significant resources to avoid or mitigate a minor potential adverse impact may not be prudent. In some cases, a higher degree of risk may be acceptable. As such, the amount of oversight of the Board for different types of risk depends on the nature of the risk.

The risk oversight responsibility of the Board and its committees is supported by our management reporting processes, which are designed to provide visibility to the Board to those Company personnel responsible for risk assessment, including our Chief Legal Officer, who also serves as our Chief Compliance Officer and reports to the Chief Executive Officer, and to provide information about management's identification, assessment and mitigation strategies for critical risks. Our management team is responsible for day-to-day risk management. This includes identifying, evaluating and addressing potential risks that may exist at the enterprise, strategic, reputational, financial, operational, legal, compliance and reporting levels. The Board maintains an open dialogue with, has regular access to, and receives ongoing updates from, management and, when appropriate, outside advisors and experts, with respect to any potential risks identified by management. The Board believes that this division of responsibilities among the Board, its committees and management allow us to appropriately monitor risks over the short, intermediate and long-term.

63.     The 2024 Proxy and the 2025 Proxy thus assured stockholders that the Director

Defendants understood Company-wide risks, actively oversaw the Company's risks and

exposures, as well as steps taken to monitor and mitigate risk exposures. In reality, the Director Defendants were utterly failing in their oversight duties by allowing the Company to operate with inadequate internal controls which resulted in the failure to disclose or prevent the Defendants from causing the Company to make materially false and misleading statements concerning (1) that the Company's strategy of pursuing "adjacencies, collaborations and promotions" was not growing the customer base nor delivering the level of growth in net sales as trumpeted; (2) that as the Company's strategy of "adjacencies, collaborations and promotions" wavered, it relied on brand collaborations "to carry quarters" and obscure otherwise weak underlying financial results; (3) that as a result, the Company was unlikely to meet its financial guidance; (4) that, as a result of the foregoing, Defendants' optimistic statements about the Company's business, operations, and prospects were materially misleading and lacked a reasonable basis.

64.     As a result of these misleading statements, the Company's stockholders voted via an uninformed stockholder vote to re-elect the Director Defendants to the Board.

**F.      The Board Breached its Fiduciary Duties**

65.     As officers and/or directors of Bath & Body Works, the Defendants owed Bath & Body Works fiduciary duties of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage Bath & Body Works in a fair, just, honest and equitable manner. The conduct of the Director Defendants involves a knowing or reckless violation of their obligations as directors and officers of Bath & Body Works, the absence of good faith on their part, and a reckless disregard for their duties to the Company that Director Defendants were aware or should have been aware posed a risk of serious injury to the Company.

66.     Defendants, because of their positions of control and authority as directors and/or officers of Bath & Body Works, were able to and did exercise control over the wrongful acts

complained of herein. As officers and/or directors of a publicly-traded company, the Defendants had a duty to prevent the dissemination of inaccurate and untruthful information regarding Bath & Body Works's financial condition, performance, growth, operations, financial statements, business, management, earnings, internal controls, and business prospects, so as to ensure that the market price of the Company's common stock would be based upon truthful and accurate information.

67.     To discharge their duties, the officers and directors of Bath & Body Works were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors and Bath & Body Works were required to, among other things:

> (a)     Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the Company's stockholders;

> (b)     Conduct the affairs of the Company in a lawful, efficient, business-like manner to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

> (c)     Refrain from unduly benefiting themselves and other Company insiders at the expense of the Company;

> (d)     Oversee public statements made by the Company's officers and employees as to the financial condition of the Company at any given time, including ensuring that any statements about the Company's financial results and prospects are accurate, and ensuring that the Company maintained an adequate system of

financial controls such that the Company's financial reporting would be true and accurate at all times;

(e)     Remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws;

(f)     Maintain and implement an adequate and functioning system of internal controls to ensure that the Company complied with all applicable laws, rules, and regulations; and

(g)     Ensure that the Company is operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules and regulations.

68.     The conduct of the Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of the Company, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its stockholders, which the Defendants were aware, or should have been aware, posed a risk of serious injury to the Company.

69.     The Board's Audit Committee is tasked with overseeing Bath & Body Works's financial reporting system and assisting the Board with its oversight of the adequacy and effectiveness of Bath & Body Works's internal controls over financial reporting and its disclosure controls and procedures. Specifically, according to the Audit Committee's charter, the Audit Committee's responsibilities include:

- reviewing with management:

  o any analyses or other written communications prepared by management, setting forth significant financial reporting issues, estimates, judgments and methodologies relating to the preparation of the financial statements;

  o the critical accounting policies and practices of the Company;

  o the clarity of financial disclosures made by the Company;

  o any major issues regarding accounting principles and financial statement presentations; and

  o regulatory and accounting initiatives or actions applicable to the Company.

- reviewing, in conjunction with management, the Company's policies generally with respect to the Company's earnings press releases and with respect to financial information and earnings guidance provided to analysts and rating agencies, including in each case the type and presentation of information to be disclosed; and

- in conjunction with the Chief Executive Officer and Chief Financial Officer of the Company, reviewing the Company's internal controls and disclosure controls and procedures, including whether there are any significant deficiencies in the design or operation of such controls and procedures, material weaknesses in such controls and procedures, any corrective actions taken with regard to such deficiencies and weaknesses and any fraud involving management or other associates with a significant role in such controls and procedures.

70. In violation of the Audit Committee Charter, and their general duties as members of the Audit Committee, Defendants Steinour, Brady, Hondal, Morris, Rajlin, Symancyk, and Voskuil (the "Audit Committee Defendants") conducted little, if any, oversight of the Company's internal controls over financial reporting, resulting in materially false and misleading statements regarding the Company's business and consciously disregarded their duties to monitor such controls. The Audit Committee's complete failure to perform their duties in good faith resulted in misrepresentations to the public and the Company's stockholders.

71.     In addition, as officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act, the Defendants had a duty not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, so that the market price of the Company's common stock would be based upon truthful and accurate information. Accordingly, the Defendants breached their fiduciary duties by knowingly or recklessly causing the Company to make false and misleading statements of material fact about the Company's maintaining adequate internal controls and compliance with applicable rules and regulations.

72.     The Defendants' flagrant violations of their fiduciary duties and unwillingness to heed the requirements of their Audit Committee Charter have inflicted, and will continue to inflict, significant harm on Bath & Body Works.

## DERIVATIVE ALLEGATIONS

73.     Plaintiff brings this action derivatively in the right and for the benefit of Bath & Body Works to redress injuries suffered by Bath & Body Works as a direct result of the Director Defendants' breaches of fiduciary duty. Bath & Body Works is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

74.     Plaintiff will adequately and fairly represent the interests of Bath & Body Works in enforcing and prosecuting the Company's rights.

75.     Plaintiff was a stockholder of Bath & Body Works at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is currently a Bath & Body Works stockholder.

## DEMAND FUTILITY ALLEGATIONS

76.     Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation set forth as though fully set forth herein.

77.     The Bath & Body Works Board currently has ten members: Defendants Heaf, Bogliolo, Brady, Hondal, Lee, Mash, Rajlin, Steinour, Symancyk, and Voskuil.

78.     Plaintiff has not made any demand on Bath & Body Works's current Board to institute this action against the Director Defendants, as any pre-suit demand would be excused. The Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

79.     Defendants Heaf, Bogliolo, Brady, Hondal, Lee, Mash, Rajlin, Steinour, Symancyk, and Voskuil had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. In addition, Defendants Heaf, Bogliolo, Brady, Hondal, Lee, Mash, Rajlin, Steinour, Symancyk, and Voskuil owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care.

80.     Defendants Heaf, Bogliolo, Brady, Hondal, Lee, Mash, Rajlin, Steinour, Symancyk, and Voskuil making or authorization of the false and misleading statements discussed

above caused the Company's stock to trade at artificially inflated prices and misrepresented the financial health of Bath & Body Works. The failure to timely correct such statements, failure to take necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required due diligence, constitute breaches of fiduciary duties that have resulted in Defendants Heaf, Bogliolo, Brady, Hondal, Lee, Mash, Rajlin, Steinour, Symancyk, and Voskuil facing a substantial likelihood of liability. Defendants Heaf, Bogliolo, Brady, Hondal, Lee, Mash, Rajlin, Steinour, Symancyk, and Voskuil could not fairly and fully prosecute this action or any other action concerning the misconduct described above.

### A. Demand is Excused as to Defendant Heaf

81.    Defendant Heaf is the Company's CEO. Defendant Heaf's offer of employment included compensation that includes a base salary of $1,350,000 annually, an incentive of approximately $2.565 million prorated for 2025, and a one-time award of $2.5 million in restricted stock units. Defendant Heaf depends on Bath & Body Works for his income.

82.    Defendant Heaf served as a director of the Company during the Relevant Time Period. As a director, Defendant Heaf had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Heaf was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

83.    Defendant Heaf failed to conduct oversight of the Company's internal controls over financial reporting, or the Company's statements to regulators, investors, and the public. By

consciously disregarding the duty to monitor Bath & Body Works's controls, Defendant Heaf failed to protect corporate assets.

84. Defendant Heaf is a named defendant in the Securities Class Action.

85. Defendant Heaf faces a substantial likelihood of liability, making any demand on Defendant Heaf futile.

### B. Demand is Excused as to Defendant Bogliolo

86. Defendant Bogliolo served as a director of the Company during the Relevant Time Period. As a director, Defendant Bogliolo had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Bogliolo was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

87. Defendant Bogliolo failed to conduct oversight of the Company's internal controls over financial reporting, or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Bath & Body Works's controls, Defendant Bogliolo failed to protect corporate assets.

88. According to the 2025 Proxy Statement filed with the SEC, Defendant Bogliolo received $304,066 in compensation in connection with his role as a Company director. Defendant Bogliolo is not employed. Accordingly, Defendant Bogliolo cannot reasonably and objectively consider a demand to sue the Board that controls his continued compensation.

89. Defendant Bogliolo was an active participant in the misconduct described above and therefore faces a substantial likelihood of liability.

### C.    Demand is Excused as to Defendant Brady

90.    Defendant Brady served as a director of the Company during the Relevant Time Period. As a director, Defendant Brady had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Brady was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

91.    Defendant Brady failed to conduct oversight of the Company's internal controls over financial reporting, or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Bath & Body Works's controls, Defendant Brady failed to protect corporate assets.

92.    According to the 2025 Proxy Statement filed with the SEC, Defendant Brady received $292,033 in compensation in connection with her role as a Company director. Defendant Brady is not employed. Accordingly, Defendant Brady cannot reasonably and objectively consider a demand to sue the Board that controls her continued compensation.

93.    Defendant Brady was an active participant in the misconduct described above and therefore faces a substantial likelihood of liability.

94.    Defendant Brady also served on the Audit Committee during the Relevant Time Period. The Audit Committee is responsible for reviewing analyses and remarks prepared by management concerning the Company's financial condition. The Audit Committee was thus responsible for reviewing and approving Bath & Body Works's Forms 10-Q and 10-K during the Relevant Period. Defendant Brady was thus responsible for knowingly or recklessly allowing the improper statements related to the Company's strategic efforts and their ability to meet its financial guidance.

95.     Through the failure to adequately monitor the effectiveness of both the internal audit function and the independent registered public accounting firm providing auditing services, Defendant Brady knowingly or recklessly allowed the misconduct described above to occur. Defendant Brady knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Brady breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above. Defendant Brady faces a substantial likelihood of liability for these breaches, making any demand on Defendant Brady futile.

**D.      Demand is Excused as to Defendant Hondal**

96.     Defendant Hondal served as a director of the Company during the Relevant Time Period. As a director, Defendant Hondal had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Hondal was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

97.     Defendant Hondal failed to conduct oversight of the Company's internal controls over financial reporting, or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Bath & Body Works's controls, Defendant Hondal failed to protect corporate assets.

98.     According to the 2025 Proxy Statement filed with the SEC, Defendant Hondal received $312,074 in compensation in connection with her role as a Company director. Defendant Hondal is not employed. Accordingly, Defendant Hondal cannot reasonably and objectively consider a demand to sue the Board that controls her continued compensation.

99.     Defendant Hondal was an active participant in the misconduct described above and therefore faces a substantial likelihood of liability.

100.    Defendant Hondal also served on the Audit Committee during the Relevant Time Period. The Audit Committee is responsible for reviewing analyses and remarks prepared by management concerning the Company's financial condition. The Audit Committee was thus responsible for reviewing and approving Bath & Body Works's Forms 10-Q and 10-K during the Relevant Period. Defendant Hondal was thus responsible for knowingly or recklessly allowing the improper statements related to the Company's strategic efforts and their ability to meet its financial guidance.

101.    Through the failure to adequately monitor the effectiveness of both the internal audit function and the independent registered public accounting firm providing auditing services, Defendant Hondal knowingly or recklessly allowed the misconduct described above to occur. Defendant Hondal knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Hondal breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above. Defendant Hondal faces a substantial likelihood of liability for these breaches, making any demand on Defendant Hondal futile.

### E.    Demand is Excused as to Defendant Lee

102.    Defendant Lee served as a director of the Company during the Relevant Time Period. As a director, Defendant Lee had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Lee was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

103.    Defendant Lee failed to conduct oversight of the Company's internal controls over financial reporting, or the Company's statements to regulators, investors, and the public. By

consciously disregarding the duty to monitor Bath & Body Works's controls, Defendant Lee failed to protect corporate assets.

104.    According to the 2025 Proxy Statement filed with the SEC, Defendant Lee received $292,033 in compensation in connection with her role as a Company director. Defendant Lee is not employed. Accordingly, Defendant Lee cannot reasonably and objectively consider a demand to sue the Board that controls her continued compensation.

105.    Defendant Lee was an active participant in the misconduct described above and therefore faces a substantial likelihood of liability.

**F.    Demand is Excused as to Defendant Nash**

106.    Defendant Nash served as a director of the Company during the Relevant Time Period. As a director, Defendant Nash had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Nash was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

107.    Defendant Nash failed to conduct oversight of the Company's internal controls over financial reporting, or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Bath & Body Works's controls, Defendant Nash failed to protect corporate assets.

108.    According to the 2025 Proxy Statement filed with the SEC, Defendant Nash received $495,030 in compensation in connection with her role as a Company director. Accordingly, Defendant Nash cannot reasonably and objectively consider a demand to sue the Board that controls her continued compensation.

109. Defendant Nash was an active participant in the misconduct described above and therefore faces a substantial likelihood of liability.

### G. Demand is Excused as to Defendant Rajlin

110. Defendant Rajlin served as a director of the Company during the Relevant Time Period. As a director, Defendant Rajlin had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Rajlin was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

111. Defendant Rajlin failed to conduct oversight of the Company's internal controls over financial reporting, or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Bath & Body Works's controls, Defendant Rajlin failed to protect corporate assets.

112. According to the 2025 Proxy Statement filed with the SEC, Defendant Rajlin received $292,033 in compensation in connection with his role as a Company director. Accordingly, Defendant Rajlin cannot reasonably and objectively consider a demand to sue the Board that controls his continued compensation.

113. Defendant Rajlin was an active participant in the misconduct described above and therefore faces a substantial likelihood of liability.

114. Defendant Rajlin also served on the Audit Committee during the Relevant Time Period. The Audit Committee is responsible for reviewing analyses and remarks prepared by management concerning the Company's financial condition. The Audit Committee was thus responsible for reviewing and approving Bath & Body Works's Forms 10-Q and 10-K during the Relevant Period. Defendant Rajlin was thus responsible for knowingly or recklessly allowing the

improper statements related to the Company's strategic efforts and their ability to meet its financial guidance.

115. Through the failure to adequately monitor the effectiveness of both the internal audit function and the independent registered public accounting firm providing auditing services, Defendant Rajlin knowingly or recklessly allowed the misconduct described above to occur. Defendant Rajlin knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Rajlin breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above. Defendant Rajlin faces a substantial likelihood of liability for these breaches, making any demand on Defendant Rajlin futile.

### H. Demand is Excused as to Defendant Steinour

116. Defendant Steinour served as a director of the Company during the Relevant Time Period. As a director, Defendant Steinour had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Steinour was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

117. Defendant Steinour failed to conduct oversight of the Company's internal controls over financial reporting, or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Bath & Body Works's controls, Defendant Steinour failed to protect corporate assets.

118. According to the 2025 Proxy Statement filed with the SEC, Defendant Steinour received $305,000 in compensation in connection with his role as a Company director. Accordingly, Defendant Steinour cannot reasonably and objectively consider a demand to sue the Board that controls his continued compensation.

119.    Defendant Steinour was an active participant in the misconduct described above and therefore faces a substantial likelihood of liability.

120.    Defendant Steinour also served on the Audit Committee during the Relevant Time Period. The Audit Committee is responsible for reviewing analyses and remarks prepared by management concerning the Company's financial condition. The Audit Committee was thus responsible for reviewing and approving Bath & Body Works's Forms 10-Q and 10-K during the Relevant Period. Defendant Steinour was thus responsible for knowingly or recklessly allowing the improper statements related to the Company's strategic efforts and their ability to meet its financial guidance.

121.    Through the failure to adequately monitor the effectiveness of both the internal audit function and the independent registered public accounting firm providing auditing services, Defendant Steinour knowingly or recklessly allowed the misconduct described above to occur. Defendant Steinour knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Steinour breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above. Defendant Steinour faces a substantial likelihood of liability for these breaches, making any demand on Defendant Steinour futile.

**I.    Demand is Excused as to Defendant Symancyk**

122.    Defendant Symancyk served as a director of the Company during the Relevant Time Period. As a director, Defendant Symancyk had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Symancyk was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

123. Defendant Symancyk failed to conduct oversight of the Company's internal controls over financial reporting, or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Bath & Body Works's controls, Defendant Symancyk failed to protect corporate assets.

124. According to the 2025 Proxy Statement filed with the SEC, Defendant Symancyk received $292,033 in compensation in connection with his role as a Company director. Accordingly, Defendant Symancyk cannot reasonably and objectively consider a demand to sue the Board that controls his continued compensation.

125. Defendant Symancyk was an active participant in the misconduct described above and therefore faces a substantial likelihood of liability.

126. Defendant Symancyk also served on the Audit Committee during the Relevant Time Period. The Audit Committee is responsible for reviewing analyses and remarks prepared by management concerning the Company's financial condition. The Audit Committee was thus responsible for reviewing and approving Bath & Body Works's Forms 10-Q and 10-K during the Relevant Period. Defendant Symancyk was thus responsible for knowingly or recklessly allowing the improper statements related to the Company's strategic efforts and their ability to meet its financial guidance.

127. Through the failure to adequately monitor the effectiveness of both the internal audit function and the independent registered public accounting firm providing auditing services, Defendant Symancyk knowingly or recklessly allowed the misconduct described above to occur. Defendant Symancyk knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Symancyk breached the fiduciary duty of loyalty and good faith

by participating in the misconduct described above. Defendant Symancyk faces a substantial likelihood of liability for these breaches, making any demand on Defendant Symancyk futile.

**J.    Demand is Excused as to Defendant Voskuil**

128.    Defendant Voskuil served as a director of the Company during the Relevant Time Period. As a director, Defendant Voskuil had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Voskuil was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

129.    Defendant Voskuil failed to conduct oversight of the Company's internal controls over financial reporting, or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Bath & Body Works's controls, Defendant Voskuil failed to protect corporate assets.

130.    According to the 2025 Proxy Statement filed with the SEC, Defendant Voskuil received $312,074 in compensation in connection with his role as a Company director. Accordingly, Defendant Voskuil cannot reasonably and objectively consider a demand to sue the Board that controls his continued compensation.

131.    Defendant Voskuil was an active participant in the misconduct described above and therefore faces a substantial likelihood of liability.

132.    Defendant Voskuil also served on the Audit Committee during the Relevant Time Period. The Audit Committee is responsible for reviewing analyses and remarks prepared by management concerning the Company's financial condition. The Audit Committee was thus responsible for reviewing and approving Bath & Body Works's Forms 10-Q and 10-K during the Relevant Period. Defendant Voskuil was thus responsible for knowingly or recklessly allowing

the improper statements related to the Company's strategic efforts and their ability to meet its financial guidance.

133.    Through the failure to adequately monitor the effectiveness of both the internal audit function and the independent registered public accounting firm providing auditing services, Defendant Voskuil knowingly or recklessly allowed the misconduct described above to occur. Defendant Voskuil knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Voskuil breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above. Defendant Voskuil faces a substantial likelihood of liability for these breaches, making any demand on Defendant Voskuil futile.

134.    Based on the facts alleged herein, there is a substantial likelihood that Plaintiff will be able to prove that these individuals breached their fiduciary duties by condoning the misconduct and failing to take meaningful action to remedy the resultant harm.

### CLAIMS FOR RELIEF

### COUNT I

### Breach of Fiduciary Duty
### (Derivatively Against The Director Defendants)

135.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

136.    Each of the Director Defendants owed and owes Bath & Body Works the highest obligations of loyalty, good faith, due care, and oversight.

137.    Each of the Director Defendants violated and breached their fiduciary duties of loyalty, good faith, candor and oversight to the Company.

138.    The Director Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. In breach of their fiduciary

duties, the Director Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

139. In addition, the Director Defendants further breached their fiduciary duties owed to Bath & Body Works by willfully or recklessly making and/or causing the Company to make false and misleading statements and omissions of material fact and allowing the Company to operate with inadequate internal controls which resulted in the misrepresentations and failure to disclose that (1) the Company's strategy of pursuing "adjacencies, collaborations and promotions" was not growing the customer base nor delivering the level of growth in net sales which the Company praised; (2) as the Company's strategy of "adjacencies, collaborations and promotions" waned, the Company turned to brand collaborations "to carry quarters" and obscure weak underlying financial results; (3) as a result, the Company was unlikely to meet its own previously issued financial guidance; (4) that, as a result of the foregoing, Defendants' commendatory statements about the Company's business, operations, and prospects were materially misleading.

140. The Director Defendants failed to correct and cause the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact, exposing them to personal liability to the Company for breaching their fiduciary duties.

141. The Director Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the wrongdoing set forth herein and to fail to maintain adequate internal controls. The Director Defendants had actual knowledge that the Company was engaging in the wrongdoing set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the wrongdoing and to fail to maintain adequate internal controls, even

though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities. The Director Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

142. As a direct and proximate result of the breaches of duty alleged herein, Bath & Body Works has sustained and will sustain significant damages.

143. As a result of the misconduct alleged herein, these Defendants are liable to the Company.

144. Plaintiff, on behalf of Bath & Body Works, has no adequate remedy at law.

**COUNT II**
**Breach of Fiduciary Duty**
**(Derivatively Against the Officer Defendants)**

145. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

146. The Officer Defendants are executive officers of the Company. As executive officers, the Officer Defendants owed and owe Bath & Body Works the highest obligations of loyalty, good faith, due care, oversight, and candor.

147. The Officer Defendants breached their fiduciary duties owed to Bath & Body Works by willfully or recklessly making and/or causing the Company to make false and misleading statements and omissions of material fact, failing to disclose that (1) the Company's strategy of pursuing "adjacencies, collaborations and promotions" was not growing the customer base nor delivering the level of growth in net sales which the Company praised; (2) as the Company's strategy of "adjacencies, collaborations and promotions" waned, the Company turned to brand collaborations "to carry quarters" and obscure weak underlying financial results; (3) as a result, the Company was unlikely to meet its own previously issued financial guidance; (4) that, as a result

of the foregoing, Defendants' commendatory statements about the Company's business, operations, and prospects were materially misleading.

148.    The Officer Defendants failed to correct and cause the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact.

149.    As a direct and proximate result of the breaches of duty alleged herein, Bath & Body Works has sustained and will sustain significant damages.

150.    As a result of the misconduct alleged herein, the Officer Defendants are liable to the Company.

151.    Plaintiff, on behalf of Bath & Body Works, has no adequate remedy at law.

**COUNT III**
**Gross Mismanagement**
**(Against All Defendants)**

152.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

153.    By their actions alleged herein, the Defendants abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of the Company in a manner consistent with the operations of a publicly held corporation

154.    As a direct and proximate result of the Defendants' gross mismanagement and breaches of duty alleged herein, the Company has sustained significant damages.

155.    As a direct and proximate result of the gross mismanagement and breaches of duty alleged herein, Bath & Body Works has sustained and will sustain significant damages.

156.    As a result of the misconduct alleged herein, the Defendants are liable to the Company.

157.    Plaintiff, on behalf of Bath & Body Works, has no adequate remedy at law.

## COUNT IV
## Waste of Corporate Assets
## (Derivatively Against All Defendants)

158.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

159.    The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the Relevant Time Period. It resulted in continuous, connected, and ongoing harm to the Company.

160.    As a result of the misconduct described above, the Defendants wasted corporate assets by, inter alia: (i) paying excessive compensation and bonuses to certain of its executive officers; (ii) awarding self-interested stock options to certain officers and directors; and (iii) incurring potentially millions of dollars of legal liability and/or legal costs to defend Defendants' unlawful actions.

161.    As a direct and proximate result of the waste of corporate assets and breaches of duty alleged herein, Bath & Body Works has sustained significant damages.

162.    As a result of the misconduct alleged herein, the Defendants are liable to the Company.

163.    Plaintiff, on behalf of Bath & Body Works, has no adequate remedy at law.

## COUNT V
## Unjust Enrichment
## (Derivatively Against the Officer Defendants)

164.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

165.    By their wrongful acts, violations of law, and false or misleading statements or omissions of material fact that they caused to be made, the Defendants were unjustly enriched at the expense of, and the detriment of, the Company.

166.    The Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from the Company that was tied to the performance of the Company or its stock price or received compensation or other payments that were unjust in light of the Defendants' bad faith conduct.

167.    Plaintiff, on behalf of Bath & Body Works, seeks restitution from the Defendants and seeks an order from this Court disgorging all profits, including from insider transactions, the redemption of preferred stock, benefits, and other compensation, including any performance-based or valuation based compensation, obtained by the Defendants due to their wrongful conduct and breach of their fiduciary duties.

### COUNT VI
### Violation of Section 14(a) of the Exchange Act
### (Against The Director Defendants)

168.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

169.    The section 14(a) Exchange Act claims alleged herein are based solely on negligence. They are not based on any allegation of reckless or knowing conduct by or on behalf of the Director Defendants. The section 14(a) Exchange Act claims detailed herein do not allege and do not sound in fraud. Plaintiff specifically disclaims any allegation of reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to the nonfraud claims.

170.    The Director Defendants negligently issued, caused to be issued, and participated in the issuance of materially misleading written statements to stockholders which were contained in the 2024 Proxy and 2025 Proxy. In the 2024 Proxy and 2025 Proxy, the Board solicited stockholder votes to reelect the Director Defendants to the Board.

171. The 2024 Proxy and 2025 Proxy, however, misrepresented and failed to disclose the Board's risk oversight and the Company's inadequate internal controls, which facilitated the illegal behavior described herein. By reasons of the conduct alleged herein, the Director Defendants violated section 14(a) of the Exchange Act. As a direct and proximate result of these defendants' wrongful conduct, Bath & Body Works misled and deceived its stockholders by making materially misleading statements that were essential links in stockholders following the Company's recommendation and voting to reelect the Director Defendants.

172. Plaintiff, on behalf of Bath & Body Works, thereby seeks relief for damages inflicted upon the Company based upon the misleading 2024 Proxy and 2025 Proxy in connection with the improper reelection of the Director Defendants to the Board.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands judgment as follows:

A. Declaring that Plaintiff may maintain this derivative action on behalf of Bath & Body Works and that Plaintiff is a proper and adequate representative of the Company;

B. Against all of the Defendants and in favor of Bath & Body Works for the amount of damages sustained by the Company as a result of the acts and transactions complained of herein;

C. Granting appropriate equitable relief to remedy the Defendants' breaches of fiduciary duties, including, but not limited to the institution of appropriate corporate governance measures;

D. Awarding Bath & Body Works restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by Defendants;

E. Awarding Plaintiff the costs and disbursements of this action, including

reasonable attorneys' and expert fees and expenses; and

      F.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 30, 2026

*/s/ Terence R. Coates*
Terence R. Coates (0085579) – Trial Attorney
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
*tcoates@msdlegal.com*

**BRIAN MURRAY LAW PLLC**
Brian Murray*
750 E. Main Street, Suite 620
Stamford, CT 06902
Phone: (203) 246-2368
Email: bmurray@brianmurraylaw.com

**ROWLEY LAW PLLC**
Shane T. Rowley, Esq.*
Danielle Rowland Lindahl, Esq.*
50 Main Street, Suite 1000
White Plains, New York 10606
Phone: (914) 400-1920
Email: srowley@rowleylawpllc.com
       drl@rowleylawpllc.com

\*   *Motion to appear* pro hac vice *forthcoming*

## **VERIFICATION**

I, Edward Smith, am the named plaintiff in the foregoing derivative action. I have read the foregoing Verified Stockholder Derivative Complaint, know the contents thereof, and authorized its filing.   The contents alleged therein are true to my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.   I further declare that I am a current holder, and have been a holder, of Bath & Body Works, Inc., common stock during the time period in which the wrongful conduct alleged and complained of occurred.

I declare under penalty of perjury that the foregoing is true and correct.   Executed this __26__ day of January 2026.

_Edward Smith_
Edward Smith (Jan 26, 2026 10:38:42 EST)
_____
Edward Smith